EARVISION, INC. and BELTONE      :
HOLDINGS II, INC. d/b/a BELTONE    :
NEW ENGLAND                   :
                                   :
         v.                :     C.A. No. 11-615S
                                   :
BRUCE N. WYMAN             :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Before this Court is Defendant Bruce N. Wyman's Motion to Dismiss or, in the Alternative, for Transfer of Venue pursuant to Fed. R. Civ. P. 12(b) and 28 U.S.C. § 1404. (Document No. 3).  Plaintiff Beltone New England ("BNE") opposes the Motion.  (Document No. 5).  The matter has been referred to me for preliminary review, findings and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv72(a).  A hearing was held on February 29, 2012. After reviewing the Memoranda submitted, listening to the arguments of counsel and conducting independent research, I recommend that Defendant's Motion (Document No. 3) be DENIED.

### Statement of Facts[1]

BNE is a Rhode Island general partnership with its principal place of business in Warwick, Rhode Island.  (Document No. 1-2, ¶ 1).  BNE provides hearing consultation,

---

[1] In connection with his Motion, Wyman submitted his Declaration.  In its Opposition, BNE submitted the Affidavit of Michele Dean, and referred the Court to several affidavits that were submitted to the state court in connection with a Motion for Preliminary Injunction.  Because the Declaration and Affidavits presented to the Court contain disputed facts outside of the Amended Complaint and those facts are not necessary to resolving this Motion, I opt to exclude them from consideration on this Motion pursuant to Fed. R. Civ. P 12(d).  See also Trombley v. Bank of Am. Corp., 675 F. Supp. 2d 266, 268 (D.R.I. 2009).

counseling and treatment services.  Id. p. 7.  Wyman is a resident of the State of Maine.  Id. ¶ 2.

BNE hired Wyman to work as a Hearing Care Practitioner in April 2009.  Id. ¶ 6.  Wyman

signed an Employment Agreement with BNE dated April 6, 2009 (the "Employment

Agreement").  Id. ¶ 8.

 While employed by BNE, Wyman worked at several BNE locations in Maine, including

Norway, Lewiston, Scarborough and Brunswick.  Id. ¶ 9.  Wyman's employment was terminated

by BNE on or about June 10, 2011.  Id. at ¶ 12.  BNE alleges that sometime thereafter, Wyman

opened Falmouth Hearing Aids, a business that he operates, owns and manages, which competes

with BNE in violation of the non-compete clause of the Employment Agreement.  Id. ¶ 13.

Plaintiff's counsel sent Wyman a demand that he cease and desist his violation of the non-

compete clause of the Employment Agreement.  Id. ¶ 17.  The non-compete clause states:

> Employee hereby agrees that,…during the Restricted Period, Employee will not,
> directly or indirectly, own, manage, operate, control, invest or acquire an interest
> in, or otherwise engage or participate in (whether as a proprietor, partner,
> stockholder, director, member, manager, partner, officer, employee, joint
> venturer, investor, or other participant) in any Competitive Business in the
> Territory.

Id. at p. 9.  The term "Restricted Period" is defined as the period commencing on the date of the

Employment Agreement and ending one year after termination of employment, and the term

"Territory" is defined as an "area within a fifty (50) mile radius of any BNE location to which

Employee is assigned during the term of his/her employment."  Id. at p. 7.  BNE claims that

Wyman's business, Falmouth Hearing Aids, is located within fifty miles of all four of the BNE

locations at which Wyman was assigned to work while employed by BNE.  Id. ¶ 14.

 Included as a term in the non-compete clause is a provision which states "[s]hould

EMPLOYEE violate any of the terms of this AGREEMENT, COMPANY shall be entitled to

both injunctive and monetary relief in a court of competent jurisdiction sitting in the State of Rhode Island." Id. at p. 9, ¶ 7(d). On November 4, 2011, BNE filed an action against Wyman in the Rhode Island Superior Court, Kent County. On December 12, 2011, Wyman filed a Notice of Removal to this Court. (Document No. 1).

**Discussion**

**A.    Personal Jurisdiction**

In a typical Motion considering a challenge to personal jurisdiction, the starting point for the Court's inquiry is whether a defendant has minimum contacts with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). In this case, however, the central issue is whether the forum selection clause in the Employment Agreement is sufficient to confer jurisdiction over Wyman in Rhode Island. BNE asserts that the Court has jurisdiction by virtue of the forum selection clause, while Wyman points to several deficiencies in the clause.

The Employment Agreement states that BNE "shall be entitled to both injunctive and monetary relief in a court of competent jurisdiction sitting in the State of Rhode Island" in the event the employee violates any of the Agreement's terms including the non-compete clause. (Document No. 1-2 at p. 9). It is undisputed that parties to a contract are permitted to waive personal jurisdiction by agreeing in advance to submit to a particular jurisdiction. Microfibres Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 322 (D.R.I. 1998) (citing Nat'l Equip. Rental Ltd. v. Szukhent, 375 U.S. 311, 315-316 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court.")). In Am. Biophysics Corp. v. Dubois Marine

Specialties, 411 F. Supp. 2d 61, 63 (D.R.I. 2006), the Court held that forum selection clauses are considered "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." (citation omitted). Therefore, Wyman bears the burden of demonstrating that the forum-selection clause would be "unreasonable under the circumstances," in order to prevail on his challenge to personal jurisdiction.

Wyman's primary argument is that the language contained in the forum selection clause is deficient because it does not specifically state that Wyman consents to personal jurisdiction and because it does not contain certain terms that Wyman argues are necessary to effectuate a valid consent. (Document No. 3-1 at pp. 6-8). Wyman cites to several cases and a Rhode Island Bar Journal Article in support of his position that the "phraseology" in this forum selection clause is insufficient. Id. at p. 8. The cases and article cited by Wyman do not carry the day, however, because they fail to present a clear, black letter rule regarding language that must be contained in a forum selection clause to constitute a valid consent to personal jurisdiction.

Here, the forum selection clause confers jurisdiction as to "both injunctive and monetary relief in a court of competent jurisdiction sitting in the State of Rhode Island." (Document No. 1-2, p. 9). In Am. Biophysics, this Court held that a clause stating that the agreement "shall be construed and enforced in accordance with the laws of the state of Rhode Island" was sufficient to expressly vest jurisdiction with the District of Rhode Island. 411 F. Supp. 2d 61 at 63. (emphasis added). The Court relied in part on Summit Packaging Sys., Inc., v. Kenyon & Kenyon, 273 F.3d 9, 13 (1st Cir. 2001), which held that "when parties agree that they 'will submit' their dispute to a specified forum, they do so to the exclusion of all other forums."

Moreover, in <u>Inso Corp. v. Dekotec Handelsges</u>, 999 F. Supp. 165, 166-167 (D. Mass. 1998), the District of Massachusetts held that a clause stating "the parties stipulate that the proper forum…shall be…the United States District Court for the District of Massachusetts," was sufficient to vest personal jurisdiction in that forum. The Court went on to hold that the forum selection clause at issue conferred personal jurisdiction upon the out-of-state party based on "implied consent to personal jurisdiction," specifically stating, "a waiver of objection to venue would be meaningless…if it did not also contemplate a concomitant waiver of objection to personal jurisdiction." <u>Id.</u> at 167 (citation omitted). The reasoning in <u>Inso</u> has equal force in this case, in that a waiver of objection to Rhode Island as the forum state for purposes of "both injunctive and monetary relief" would be meaningless if it did not also constitute a waiver of objection to personal jurisdiction in Rhode Island. <u>See</u> <u>id.</u>

In addition to the lack of case law supporting Wyman's "phraseology" argument, there is an established test that a party challenging a forum selection clause must meet. The challenging party is required "to present 'evidence of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that it is effectively deprived of its day in court.'" <u>Am. Biophysics,</u> 411 F. Supp. 2d at 63 (<u>quoting</u> <u>Fireman's Fund. Am. Ins. Cos. v. Puerto Rican Forwarding Co.</u>, 492 F.2d 1294, 1297 (1st Cir. 1974)). Wyman has not done so. There has been no evidence of fraud or undue influence presented in this case, as the facts indicate that both parties willingly and knowingly entered into the Employment Agreement. Therefore, Wyman must show that there was either (1) "overweening bargaining power" between the parties or (2) "such serious inconvenience in litigating in [Rhode Island]" that he would be "effectively deprived of [his] day in court." <u>Id.</u> While Wyman claims BNE is "the

more sophisticated party" and that it drafted the Employment Agreement "presumably with the assistance of counsel," this is not a sufficient showing that there was such unequal bargaining power that the clause should be rendered unenforceable as a matter of law. (Document No. 3-1 at pp. 8-9). If such a showing was sufficient, then nearly every forum selection clause contained in an employment agreement could be sidestepped by the employee. In addition, for the reasons discussed <u>infra</u> in Section B,[2] Wyman has also made an insufficient showing of inconvenience under these circumstances.

Based on the above-cited legal precedent, the Court finds that the forum selection clause in this case sufficiently vests personal jurisdiction with this Court.

## B. Transfer of Venue

Defendant concedes that the "heart" of his argument is his request for a transfer of venue. (Document No. 7 at pp. 1, 3). Defendant requests that the case be transferred to the District of Maine pursuant to 28 U.S.C. §1404(a). Section 1404(a), 28 U.S.C. states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Wyman asks the Court to transfer the case, pointing out that the events underlying the case transpired in Maine, and that many of the witnesses and documents central to the case are located in Maine. Wyman notes that "the presence of a valid and enforceable forum selection clause does not estop a federal court in the contractually-appointed forum from ordering a convenience-type transfer to another district…" <u>Textron Fin. Corp. v. Ship & Sail, Inc.,</u> No. 09-

---

[2] The inconvenience factor is reviewed within the nine <u>D'Antuono</u> factors for determining whether a forum selection clause is "reasonable" and should be enforced, and therefore are discussed in greater detail within Section B of this discussion (Transfer of Venue).

617ML, 2010 WL 1912653, *5 (D.R.I. May 11, 2010) (quoting D'Antuono v. CCH Computax Sys., Inc., 570 F. Supp. 708, 711 (D.R.I. 1983)).

Ultimately, discretion as to whether to enforce a forum selection clause lies with the District Court. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981). There are several factors, however, that should figure into the Court's consideration. First, there is a valid forum selection clause present in this case. Although the Court has discretion to transfer the case notwithstanding the clause, the presence of a valid forum selection clause "[is] 'a significant factor that figures centrally in the District Court's calculus." Ship & Sail, 2010 WL 1912653, *5 (quoting Astro-Med, Inc. v. Nihon Kohden Am. Inc., 591 F.3d 1, 12-13 (1st Cir. 2009)). Moreover, "[f]orum selection clauses enjoy a strong presumption of validity because these clauses, like any other contract term, are bargained for, and freely entered into; and contract terms are enforced absent fraud, mistake, or some other infirmity." Groninger Ins. Agency, LLC v. Astonish Results, C.A. No. 11-564S, 2012 WL 1116230, *1 (D.R.I. April 2, 2012) (citation omitted). Thus, there must be other significant factors in play to overcome the presence of a valid forum selection clause. Second, there is a strong presumption in favor of a plaintiff's choice of its home forum. Id.; see also Ryan, Klimek, Ryan P'ship v. Royal Ins. Co. of Am., 695 F. Supp. 644, 647 (D.R.I. 1988). In this case, Plaintiff is a Rhode Island corporation and has brought suit in Rhode Island. Its choice of forum is entitled to some deference, even without the consideration of the forum selection clause. Finally, the Court is mindful that Wyman, as the party seeking the transfer of venue, bears the burden "to make a strong showing that transfer of venue is appropriate under the circumstances." McEvily v. Sunbeam-Oster Co., Inc., 878 F. Supp. 337, 344 (D.R.I. 1994).

In D'Antuono, 570 F. Supp. at 712, this Court set forth nine factors that should be weighed in determining whether a forum selection clause is reasonable and enforceable. These factors are also relevant to and instruct a venue analysis under Section 1404(a). The D'Antuono factors are:

> (1) the identity of the law which governs the construction of the contract; (2) the place of execution of the contract(s); (3) the place where the transactions have been or are to be performed; (4) the availability of remedies in the designated forum; (5) the public policy of the initial forum state; (6) the location of the parties, the convenience of prospective witnesses, and the accessibility of evidence; (7) the relative bargaining power of the parties and the circumstances surrounding their dealings; (8) the presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances; [and] (9) the conduct of the parties.

Id. (citations omitted).

Here, the parties parse through each of the factors, debating which favor their respective positions. In the end, several factors weigh in favor of enforcing the forum selection clause and denying a transfer to Maine. First, the forum selection clause is a term of the contract that both parties agreed to. The parties chose Rhode Island law to govern and agreed that Rhode Island would be the forum in the event of a dispute concerning the non-compete clause. (Document No. 1-2 at pp. 9, 10). Second, as previously noted, Plaintiff is entitled to a presumption in favor of its choice of forum.

While there are certainly arguments to be made for both parties on the issue of convenience, there has been no showing of fraud, undue influence or duress by Wyman. The place of execution of the contract and the availability of remedies in the designated forum are neutral factors, because the contract was executed both in Rhode Island and Maine and because

the remedies available in both states are equivalent.[3]  The place where the transactions were performed, the location of the parties, the convenience of prospective witnesses and the accessibility of evidence weigh in favor of Maine.  Both parties have raised the issue of compelling potential out-of-state witnesses to come to Rhode Island to testify, and it appears that the majority of potential witnesses reside in Maine.  However, this Court is located approximately 150 miles from the federal courthouse in Portland, Maine which does not substantially tilt the scale on the issue of convenience.  Further, it is undisputed that Wyman, as a Maine resident and employee, freely signed an Employment Agreement with a Rhode Island entity agreeing that it could seek relief against him in "a court of competent jurisdiction sitting in the State of Rhode Island."  Given the scope of his employment, Wyman knew when he signed the Employment Agreement, or reasonably should have known, that it was highly unlikely that Rhode Island would have any direct connection with any future dispute about his post-employment activities.  Yet, he freely signed an agreement consenting to jurisdiction in Rhode Island and application of Rhode Island law for such purposes.  BNE counters that Wyman has been operating a competing enterprise in direct violation of the non-compete agreement, indicating that Wyman has "unclean hands" and thus the equities favor enforcing the contractually agreed choice of forum.  (Document No. 5-1, p. 19).

Although the convenience factors present a close call, Wyman has not met his burden of establishing that the totality of the circumstances require this Court to negate the forum selection clause and transfer this case to the District of Maine.  This is particularly so because BNE is

---

[3]    It should be noted that this factor examines the *availability* of remedies in the designated forum, and does not consider where the remedies will ultimately occur or come from.  Thus, Wyman misses the mark when he argues that any damages would be paid via Wyman's assets in Maine and any potential injunctive relief would apply to his business operations.

entitled to the benefit of <u>both</u> a presumption in favor of its choice of forum <u>and</u> some additional presumptive weight because the parties agreed to jurisdiction and venue in Rhode Island to resolve a dispute of this nature. In other words, when Wyman signed the Employment Agreement permitting BNE to seek judicial relief in Rhode Island to enforce the non-compete provisions, he essentially bargained away the right to complain about the burdens of litigating in Rhode Island. Wyman has simply not met his burden of establishing that the <u>D'Antuono</u> or Section 1404(a) factors, on balance, overcome these contractual considerations and mandate transfer of this case to Maine.

**Conclusion**

For the reasons stated, I recommend that Defendant Wyman's Motion to Dismiss or, in the Alternative, for Transfer of Venue (Document No. 3) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 3, 2012